# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR JAMES,<br><br>           Petitioner,<br><br>      v.<br><br>R. A. RIOS, Warden<br><br>           Respondent. | 1:12-cv-00008-DLB (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT<br><br>[Doc. 1] |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

## BACKGROUND

In the instant petition, Petitioner challenges a disciplinary infraction he received for fighting with another inmate. More specifically, Petitioner contends 1) he was acting in self-defense and should not have been issued a rules violation; 2) he was denied a fair and impartial discipline hearing; and 3) he was subjected to cruel and unusual punishment by insufficient staff available to protect him from harm.

Respondent filed an answer to the petition on May 21, 2012. Petitioner did not file a traverse.

///

///

DISCUSSION

I.   Subject Matter Jurisdiction and Venue

Writ of habeas corpus relief extends to a person in custody under the authority of the United States.  See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).  At the time the instant petition was filed, Petitioner was housed at the United States Penitentiary in Atwater, California.[1] "'[J]urisdiction attaches on the initial filing for habeas corpus relief, and it is not destroyed by a transfer of the petition and the accompanying custodial change.'" Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990), quoting Santillanes v. United States Parole Comm'n, 754 F.2d 887, 888 (10th Cir. 1985); accord Smith v. Campbell, 450 F.2d 829, 834 (9th Cir. 1971).  Accordingly, this Court has jurisdiction to review the instant petition.

II.  Exhaustion of Administrative Remedies

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir. 1984); Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir. 1983).  The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement. Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  Thus, "because exhaustion is not required by statute, it is not jurisdictional." Id.  If Petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits or require the petitioner to exhaust his administrative remedies before proceeding in court."

If the petitioner did not properly exhaust his administrative remedies, and such remedies are no longer available, he may have procedurally defaulted on his claims.  See Francis v. Rison, 894 F.2d 353, 354-55 (9th Cir.1990) (applying procedural default rules to administrative

---

[1] Petitioner is currently incarcerated at the Federal Correctional Institution in Bennetttsville, South Carolina. Federal Bureau of Prisons Inmate Locator page available at http://www.bop.gov

appeals); see generally Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977); Tacho v. Martinez, 862 F.2d 1376, 1378 (9th Cir.1988). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. See Francis, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); Murray, 477 U.S. at 492 (cause and prejudice test applied to procedural defaults on appeal); Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 906-08 (9th Cir.1986) (cause and prejudice test applied to pro se litigants).

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq. Respondent submits the declaration of D. Rupert, Discipline Hearing Officer at the United States Penitentiary in Lee County, Virginia, who explains the administrative remedy procedure available at the Federal Bureau of Prisons. "The Federal Bureau of Prisons makes available to its inmates a three level administrative remedy process should informal resolution procedures fail to achieve sufficient results. The first level of administrative remedy process review is normally begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. However, challenges to disciplinary decisions of the DHO may be made directly to the region by submitting a Regional Administrative Remedy Appeal to the Regional Office for the geographic region in which the inmate's institution of confinement is located. For an inmate at USP Lee, this appeal would be filed with the Mid-Atlantic Regional Office of the Federal Bureau of Prisons in Annapolis Junction, Maryland. If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. This is the third and final step of the Bureau's administrative remedy process. These procedures are outlined in Bureau Program Statement 1330.16, *Administrative Remedy Program* (12/31/2007), which is available at www.bop.gov, and is codified in part at 28 C.F.R. § 542.10, *et seq*." Ex. A, Declaration of D. Rupert.

Respondent argues that Petitioner has not exhausted the administrative remedies as to his challenge to the disciplinary action at issue in this case. On May 31, 2011, Petitioner filed a

1 Regional Administrative Appeal (Remedy ID no. 645315-R1).  The Regional Director denied the
2 appeal on August 31, 2011.
3       The Central Office Administrative Remedy did not receive an appeal (Remedy ID No.
4 645315-A1) until September 26, 2011.  The appeal was rejected on October 13, 2011.  When an
5 appeal is rejected, the SENTRY system automatically generates a Rejection Notice.  Status codes
6 are entered explaining the reason for the rejection which appears on the rejection notice.
7 Respondent an excerpt of the Technical Reference Manual 1301.02, SENTRY Administrative
8 Remedy (10/3/1997), which sets forth the code and remark that is associated with the code
9 identified.  See Attachment 7, to Decl. of Rupert.  Petitioner was advised that his appeal would
10 be reconsidered if he modified his submission to include no more than one continuation page
11 (Rejection Status Reason "CPG"), include copies of the submission which are legible and contain
12 the same wording ("OTH" and "REMARKS"), and include a copy of the regional appeal (RAP)
13 to be resubmitted in the proper form within 15 days ("RSA").
14       On December 12, 2011, well over 15 days after, the Central Office received the re-
15 submitted appeal by Petitioner (Remedy ID No. 645315-A2).  The appeal was rejected on
16 December 30, 2011, as untimely, and Petitioner was advised to resubmit with
17 "DOCUMENTATION FROM STAFF ON LETTERHEAD THAT THE LATE FILING WAS
18 NOT YOUR FAULT."  Petitioner did not submit any further documentation.  Attachment 6.
19 Therefore, Petitioner did not exhaust the administrative remedies.
20 IV.    Analysis of Petition
21     A.    Deprivation of Rights During Disciplinary Hearing and Cruel and Unusual
22           Punishment
23       Petitioner contends his rights were violated during the hearing because he was acting out
of self-defense.  Petitioner also contends he was subjected to cruel and unusual punishment.
24       A petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is limited to attacks by
25 prisoners which challenge the fact or duration of their confinement.  Preiser v. Rodriguez, 411
26 U.S. 475, 484, 498 (1973); Crawford v. Bell, 599 F.2d 890, 891 (9th Cir. 1979); Badea v. Cox,
27 931 F.2d 573, 574 (9th Cir. 1991).  In contrast, challenges to the conditions of confinement are
28

4

properly raised in a civil rights action. Preiser, 411 U.S. at 498-499; Hartman v. Summers, 878 F.Supp. 1335, 1347 (C.D. Cal. 1995).

These two allegations are subsumed in the real challenge, i.e. Petitioner's challenge to the DHO's disciplinary decision resulting in disallowance of 27 days good conduct time. Thus, the Court will review Petitioner's due process challenge which actually affects the fact or duration of his confinement.

B.  Procedural Due Process and Some Evidence

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927). The "some evidence" standard is "minimally stringent," and a decision must be upheld if there is any reliable evidence in the record that could support the conclusion reached by the fact finder. Hill, 472 U.S. at 455-456; see also Barnsworth v. Gunderson, 179 F.3d 771, 779 (9th Cir. 1990); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987). Determining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or the weighing of evidence. Hill, 472 U.S. at 455; Toussaint v.

McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986).

Title 18 U.S.C. § 4042(3) provides in relevant part that the BOP shall "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."  18 U.S.C. § 4042(3).  Pursuant to this statutory authority, the BOP has developed regulations which set forth the prohibited acts, applicable sanctions, inmates' protections, and procedures to be followed when imposing disciplinary actions.  See e.g. 28 C.F.R. 541.13, Table 3.

In this case, it is clear Petitioner's due process rights were met.  He received written notice of the allegations along with documentation of the specific charge more than 24 hours prior to the hearing.  Petitioner was given the initial incident report on April 11, 2011, and an amended incident report on April 30, 2011.  The Unit Disciplinary Committee (UDC) conducted a hearing on May 9, 2011, and the Disciplinary Hearing Officer held a hearing on May 13, 2011.[2]  Petitioner was also provided an opportunity to call witnesses and present evidence, including his own statement regarding the incident.  Rupert Decl. ¶¶ 6-7 & Att. 1 at 2, Att. 2 at 2, Att. 3.  Petitioner was also advised and took advantage of having a staff representative assist him at the hearing.  Rupert Decl. ¶¶ 6-7, Att. 1 at 1, Att. 5.  Finally, Petitioner was provided a written copy of the decision which contained the summary of the evidence and reasons relied upon for the finding.  Accordingly, his due process rights under Wolff were met.

Petitioner contends that he was denied a fair and impartial hearing officer.  Inmates are entitled to have their disciplinary charges heard by an impartial hearing tribunal.  See Wolff, 418 U.S. at 570-571 (hearing tribunal must be "sufficiently impartial to satisfy the Due Process Clause").  The Ninth Circuit has declared that a prison official who has participated in the case as an investigating or reviewing officer, or who has personal knowledge of the incident, is not sufficiently impartial to preside over the hearing.  Clutchette v. Procunier, 497 F.2d 809, 820 (9th Cir. 1974), modified, 510 F.2d 613, rev'd on other grounds, Baxter v. Palmigiano, 425 U.S. 308

---

[2] After an investigation by a Lieutenant, the matter is referred to the Unit Discipline Committee (UDC) to determine whether the matter should be resolved at that level or referred to the DHO for hearing.  28 C.F.R. § 541.15(h).  Once a UDC refers an incident report to the DHO for a hearing, the DHO has the authority to make findings consistent with the facts presented.  28 C.F.R. § 541.16(c).

1  (1976); see also Wolff, 418 U.S. at 592 (Marshall, J., concurring) ("In my view due process is
2  satisfied as long as no member of the disciplinary board has been involved in the investigation or
3  prosecution of the particular case, or has had any other form of personal involvement in the
4  case."). The Code of Federal Regulations provides that "[i]n order to insure impartiality, the
5  DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the
6  incident, or play any significant part in having the charge(s) referred to the DHO." 28 C.F.R. §
7  541.16(b) (2010).

Here, the record does not support Petitioner's argument that the DHO was not impartial. The record reflects that the DHO: (1) was not involved in the investigation or reporting of Petitioner's case; (2) did not have any personal knowledge of the incident; (3) was not a witness to the incident; (4) did not play a significant role in having the charges referred to the DHO; and (5) was not a member of the UDC. Rather, DHO Rupert based his decision upon the evidence before him and application of the disciplinary rules.

Due process also requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455. Here, the decision was supported by sufficient evidence in the form of the officer's eyewitness account. At the hearing, the DHO considered the incident report by officer Taylor as well as Petitioner's statement that he was acting in self-defense. The DHO found credible the written report by officer Taylor, who observed Petitioner and another inmate in an altercation on the top tier of the J unit. Rupert Decl., Att. 2, Incident Report at 1. In addition to the officer's report, the DHO considered the statements offered by Petitioner during the disciplinary process. Id., Att. 1, DHO report at 2 & Att. 2 at 1 & 2. It was specifically noted:

> You made no comment to the Investigating Officer. During your UDC hearing you stated, "I was trying to defend myself." During your DHO hearing you admitted to committing the prohibited behavior by stating, "It started on the basketball court. I thought it was dead. I was fighting after I got attacked."

Id., Att. 1, DHO Report at 2.

Petitioner maintains that he was acting in self-defense and the incident report issued by officer Taylor supports his claim. A description of the incident contained in the incident report issued by officer Taylor specifically states:

> On April 11, 2011 at 8:56 p.m. while working as the J-unit officer, I observed inmates Neely #20771-076 and James #42420-074 in an altercation on the top tier of J-Unit. Inmate Neely #20771-076 struck Inmate James #42420-074 once with a lock on a belt. Inmate Neely dropped the lock and began striking Inmate James in the head and upper torso area with closed left and right fists. Inmate James #42420-074 initially was trying to defend himself. When Inmate Kornegay 51630-056 picked up the lock and attempted to strike Inmate James with it, Inmate James began fighting by striking Inmate Neely with his left and right closed fists in the upper and lower torso area. Inmate James and Inmate Neely refused continuous orders to stop fighting and continued to fight each other with closed left and right fists striking each other in the head and upper torso until enough staff arrived to physically separate them.

Att. 2 at 1.

The DHO found that although it appeared Petitioner was initially acting in self-defense, he continued to fight and was observed striking another inmate with his left and right closed fights in the upper and lower torso area and refused repeated orders to stop fighting by continuing to hit one another. In considering Petitioner's claim of self-defense, the DHO "gave greater weight to [Petitioner's] refusing continuous staff orders to stop fighting even after staff arrived on" scene. Rupert Decl. ¶ 7, Att. 1, DHO report at 3. Given the totality of the evidence, the DHO found the greater weight of the evidence supported finding that Petitioner was engaged in fighting, and was not acting in self-defense when he continued to fight after staff responded and despite staff orders to stop. Rupert Decl., Att. 1, DHO Report at 3.

In sum, all due process requirements were satisfied. The petition is without merit.

## ORDER

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED; and

2. The Clerk of Court is directed to enter judgment in favor of Respondent.


IT IS SO ORDERED.

   Dated:   **July 15, 2012**         **/s/ Dennis L. Beck**
                                                       UNITED STATES MAGISTRATE JUDGE